# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DR. KEVIN J. RENKEN
        **Plaintiff,**

    v.                                                  Case No. 04-C-1176

DR. WILLIAM D. GREGORY;
DR. WILLIAM R. RAYBURN;
DR. JOHN A. WANAT; and
DR. NANCY L. ZIMPHER
        **Defendants.**

---

## DECISION AND ORDER

On December 9, 2004, plaintiff Dr. Kevin J. Renken, a tenured Associate Professor of Mechanical Engineering at the University of Wisconsin-Milwaukee ("UWM"), filed this action pursuant to 42 U.S.C. § 1983 against defendants Dr. William D. Gregory, Dr. William R. Rayburn, Dr. John A. Wanat, and Dr. Nancy L. Zimpher, all of whom were members of UWM's faculty and administration at the time of the events giving rise to this suit. I have subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3). Before me now is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### I. BACKGROUND

Plaintiff alleges that, in June 2001, he applied for a grant from the National Science Foundation ("NSF") in connection with a project under his direction. The project involved the establishment of a thermal engineering laboratory at UWM for use in UWM's undergraduate mechanical engineering curriculum. NSF awarded the grant to plaintiff and UWM on the condition that UWM sign an agreement requiring it "to cost-share $222,667

for lab space, equipment, materials, supplies, and course buy-outs" in connection with the project. (Compl. ¶¶ 29, 36.)

Plaintiff alleges that after NSF awarded the grant, defendants:

> engaged in a number of tactics, including but not limited to, denial of course buy-outs, withholding of student payroll compensation, attempting to replace [plaintiff] as one of the project's Primary Investigators without consulting [plaintiff], withholding funds owed to the Project and, denial of expenditures – all in an effort to intentionally delay and block [plaintiff's] efforts to commence the Project, and to delay and avoid fulfilling UWM's agreement to cost-share $222,667.

(Id. ¶ 38.) Plaintiff alleges that defendants wanted to "delay and block [his] efforts to commence the project" because he refused defendants' request that he "enter a written agreement through which UWM would use money from the Grant to pay for UWM's cost-sharing duties." (Id. ¶¶ 1, 43, 46, 52.) Plaintiff believes that the agreement which defendants wanted him to sign violated the terms of the cost-sharing agreement and "the terms and federal laws controlling the Grant." (Id. ¶ 43.) Eventually, defendants decided that UWM would not fulfill its cost-sharing obligations in connection with the grant and returned the grant money to NSF.

Plaintiff alleges that defendants took other actions against him in retaliation for his refusal to allow UWM to use the NSF grant money to pay for its cost-sharing obligations. Among other things, plaintiff alleges that defendant Gregory – the dean of UWM's College of Engineering and Applied Science ("CEAS") – denied plaintiff "the same merit raise paid to other Associate Professors in his Mechanical Engineering Department" (id. ¶ 41); that defendants refused to process the payroll requests of plaintiff's graduate students who were working on projects unrelated to the NSF grant (id. ¶ 44); that defendants denied plaintiff's application for retroactive pay earned in connection with a grant unrelated to the

2

NSF grant (id. ¶ 47); and that defendants "began the process to reduce [plaintiff's] salary by 25%" (id. ¶ 64).[1]

Finally, plaintiff alleges that defendants made various statements about him that damaged his professional reputation. Plaintiff alleges that defendant Gregory stated publicly that it was "Campus policy . . . to have a UWM Police Officer present at all meetings that [plaintiff] attends." (Id. ¶ 50.) Plaintiff also claims that Gregory issued a "disciplinary memo" to plaintiff and copied it to UWM's administration and its Faculty Rights and Responsibilities Committee. This memo stated that plaintiff "acted in a manner that was unprofessional, disruptive, disrespectful, belligerent, uncooperative, non-collegial, yelling, screaming, shouting, swearing, physically aggressive, forcefully kicking the door, pounding on the desk, threatening and abusive." (Id. ¶ 79.) It also stated that plaintiff

> withheld a Ph.D. qualifying examination from a student, was insistent that UWM incur expenditures that were higher than required by NSF and inconsistent with normal UWM practices, and that as a result of [plaintiff's] 'unprofessional and uncooperative behavior with respect to [the] grant, the campus had no alternative but to return the grant to NSF.

(Id.)

Plaintiff claims that as a result of defendants' actions, he was deprived of rights protected by the First Amendment and the Due Process Clause of the Fourteenth Amendment.

## II. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Gen. Elec. Capital Corp. v. Lease

---

[1] I note that the complaint does not allege that defendants actually reduced plaintiff's salary.

Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal of an action under such a motion is warranted only if it is clear that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even assuming all of his facts are accurate, he has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In ruling on such a motion, the court must assume that all of the facts alleged in the complaint are true and draw all reasonable inferences from those facts in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990).

### III. DISCUSSION

Before discussing in detail the sufficiency of plaintiff's complaint, I note that I find it extremely difficult to determine what legal theories plaintiff hopes to pursue. In his complaint, plaintiff mentions in conclusory fashion four legal theories: "free speech," "academic freedom," "due process – substantive," and "due process – procedural." (Compl. at 20-21.) Defendants' brief in support of their motion to dismiss interprets the complaint as alleging four claims: (1) that defendants retaliated against plaintiff for engaging in speech protected by the First Amendment, (2) that defendants violated plaintiff's right of academic freedom, (3) that defendants deprived plaintiff of liberty without due process of law, and (4) that defendants deprived plaintiff of property without due process of law. In his brief in opposition to defendants' motion to dismiss, plaintiff appears to accept defendants' characterization of his complaint and does not argue that the complaint states a claim under any other legal theory. Thus, I will determine whether the complaint states a claim under any of the four legal theories identified by defendants. If

4

it does not, I will dismiss the complaint and this action. See Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1335 (7th Cir. 1995) (stating that although a litigant need not plead a legal theory in the complaint, he or she must offer legal theories that support the complaint in response to a motion to dismiss, and that "[t]he federal courts will not invent legal arguments for litigants"); see also Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999); Teumer v. Gen. Motors Corp., 34 F.3d 542, 545-46 (7th Cir. 1994).

**A.     First Amendment Claims**

Plaintiff claims that defendants retaliated against him for engaging in speech protected by the First Amendment. He bases this claim on cases holding that public employers may not retaliate against public employees for exercising their First Amendment rights. See, e.g., Gustafson v. Jones, 290 F.3d 895, 906 (7th Cir. 2002). To prevail on such a claim, the employee must show that he or she engaged in speech that "may be 'fairly characterized as constituting speech on a matter of public concern.'" Colburn v. Trs. of Indiana Univ., 973 F.2d 581, 585 (7th Cir. 1992) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).

In the present case, plaintiff's First Amendment retaliation claim is difficult to understand for several reasons. First, plaintiff never precisely identifies the "speech" which defendants allegedly retaliated against him for. As described above, the complaint alleges that defendants retaliated against plaintiff for refusing to allow defendants to use grant money to pay for its cost-sharing obligations. (See Compl. ¶¶ 1, 43, 46, 49, 50, 52.) But plaintiff has not identified any expressive component to his refusal to allow defendants to misuse the grant money, such that his refusal would be entitled to First Amendment

5

protection. See Klug v. Chicago Sch. Reform Bd. of Trs., 197 F.3d 853, 861-62 (7th Cir. 1999) (Rovner, J., concurring) (stating that for First Amendment retaliation claim to be viable, plaintiff must identify expression that forms the basis for claim, if not in the complaint then in his or her briefs). Thus, even assuming that defendants retaliated against plaintiff for refusing to acquiesce in their misappropriation of the grant money, plaintiff has not shown that such retaliation implicated the First Amendment.

Second, although plaintiff devotes substantial space in his brief to arguing that the NSF grant and the establishment of a thermal engineering laboratory at UWM were matters of public concern, plaintiff has not alleged that defendants retaliated against him for engaging in expression related to these matters. As explained, plaintiff has pleaded that defendants retaliated against plaintiff for refusing to allow them to misuse the NSF grant money. However, such refusal does not, in and of itself, constitute protected expression. Plaintiff has not alleged that defendants retaliated against him for, for instance, publicly criticizing defendants' handling of the NSF grant in an effort to raise public awareness of the matter or for making any other statements regarding the grant and/or the lab. Thus, even though the NSF grant and establishment of the lab may have been matters of public concern, plaintiff has not pleaded any facts in his complaint or described any facts in his brief indicating that defendants retaliated against him for engaging in expression related to these matters.

In reality, plaintiff's purported First Amendment claim seems to be that plaintiff had some sort of First Amendment right to the grant money once it was awarded, and that defendants' actions in failing to fulfill their obligations under the cost-sharing agreement and causing the grant money to be returned violated that right. However, plaintiff has failed

6

to identify any legal authority supporting his assertion that the First Amendment granted him an unequivocal right to the grant money. Although plaintiff cites the First Amendment right of "academic freedom," he has cited no authority suggesting that academic freedom gives a professor the right to compel a university to fulfill its obligations under a cost-sharing agreement related to a grant. Essentially, plaintiff appears to be arguing that academic freedom requires a university to provide its professors with whatever facilities and financing they may need to conduct whatever research or other activities that they want. However, that is not the law. See McElearney v. Univ. of Ill. at Chicago Circle Campus, 612 F.2d 285, 288 (7th Cir. 1979) (stating that "[t]he First Amendment does not require the State, through its University, to provide [a professor] with facilities and financing for his research"); 14A C.J.S. Colleges and Universities § 19 (1991) (citing McElearney and stating that "[a]cademic freedom does not empower a professor to dictate to a university what research will be done using the school's facilities or how many faculty positions will be devoted to a particular area"). Thus, plaintiff has not stated a viable First Amendment claim.

**B.     Deprivation of Liberty Without Due Process**

Plaintiff's next purported claim is that defendants deprived him of his liberty interest in pursuing the occupation of his choice by making false, stigmatizing statements about him which harmed his reputation as a professor. Damage to a person's reputation, standing alone, does not implicate a cognizable liberty interest. Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Paul v. Davis, 424 U.S. 693, 701-710 (1976); Dupuy v. Samuels, 397 F.3d 493, 509 (7th Cir. 2005); Klug, 197 F.3d at 859; Colaizzi v. Walker, 812 F.2d 304, 307 (7th Cir. 1987). However, when a government employer discharges an employee and in

7

the process of discharging him makes stigmatizing statements that have the effect of "blacklisting the employee from employment in comparable jobs," the government deprives the employee of his liberty to pursue the occupation of his choice. Townsend v. Vallas, 256 F.3d 661, 670 (7th Cir. 2001) (internal quotation marks and citation omitted). In such cases, the government must provide the employee with due process of law. Colaizzi, 812 F.2d at 307. To show that a government employer has infringed an employee's liberty to pursue his occupation, the employee must prove three elements: (1) that the employer's actions stigmatized the employee; (2) that the stigmatizing information was publicly disclosed; and (3) that the employee "suffered a tangible loss of other employment opportunities as a result of the public disclosure." Dupuy, 394 F.3d at 509; see also Townsend, 256 F.3d at 669-70 (7th Cir. 2001); Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794, 801 (7th Cir. 2000).

In the present case, defendants move to dismiss this claim on the ground that plaintiff cannot prove any set of facts that would show that he suffered a tangible loss of other employment opportunities. Generally, a "tangible loss of other employment opportunities" occurs when a government employer terminates an employee and makes stigmatizing public statements about the employee which have the effect of making it "virtually impossible for the employee to find new employment in his chosen field." Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 531 (7th Cir. 2000). If a government employer makes stigmatizing statements about an employee but does not terminate the employee, the employer has not deprived the employee of his liberty interest in pursuing his occupation because, in that case, the employee cannot show that it is "virtually impossible" for him to find work in his chosen field. Id.; see also Paul, 424 U.S.

at 710; Klug, 197 F.3d at 859-60; Lawson v. Sheriff of Tippecanoe County, Ind., 725 F.2d 1136, 1139 (7th Cir. 1984). However, a tangible loss of other employment opportunities may occur when the employer does not terminate the employee but instead demotes him to a job "far beneath" the one that he had. Klug, 197 F.3d at 859-60; Gustafson v. Jones, 117 F.3d 1015, 1020 (7th Cir. 1997); Lawson, 725 F.2d at 1139.

Here, although plaintiff alleges that defendants made stigmatizing statements about him, his complaint makes clear that defendants did not make such statements in the course of terminating or demoting him. Plaintiff has pleaded that he is still employed as an Associate Professor of Mechanical Engineering – the same position that he held before the events giving rise to this suit took place. (Compl. ¶ 13.) Thus, plaintiff has pleaded himself out of court on any claim that defendants infringed his liberty to pursue his occupation.[2]

---

[2]Plaintiff's complaint and his brief in opposition to defendants' motion to dismiss state that plaintiff suffered several adverse consequences as a result of defendants' stigmatizing statements, including: injury to his reputation and "standings and associations in the community" (Compl. ¶¶ 94, 96); inability "to escape the stigma" of defendants' charges (Compl. ¶ 95); and hindrance of his opportunities for promotion to full professor (Compl. ¶ 98). Plaintiff also alleges that defendants' statements caused him to lose the opportunity to obtain future grants and publish future articles, prevented him "from realizing his full potential as an outstanding engineering educator," and prevented him from "fulfilling his job responsibilities to solicit educational and research funds in order to stay on the side of cutting-edge technologies and innovative educational methods." (Br. in Opp. at 23-24.) However, plaintiff makes no effort to show that any of these consequences amounts to a "tangible loss of other employment opportunities" as that phrase is used in the case law. Thus, because "[t]he federal courts will not invent legal arguments for litigants," Stransky, 51 F.3d at 1335, plaintiff has forfeited any claim that any of these consequences resulted in a deprivation of liberty.

## C. Deprivation of Property Without Due Process

Finally, plaintiff claims that defendants deprived him of a property interest without due process of law. The only property interest which plaintiff identifies is his interest in continued employment as a tenured professor at UWM. However, as explained, plaintiff has not alleged that defendants deprived him of this interest; instead, he has alleged that he still holds the same tenured position that he held before the events giving rise to this suit occurred. (Compl. ¶ 13.) Thus, plaintiff has pleaded himself out of court on any claim that defendants deprived him of his property interest in continued employment as a tenured professor without due process of law. Plaintiff may mean to argue that he had a property interest in the NSF grant money or the establishment of a thermal engineering lab at UWM. However, he has cited no authority and made no legal argument supporting the proposition that he had a property interest in the grant money, the lab, or anything else associated with the grant. Likewise, although plaintiff seems to suggest that defendants deprived him of a property interest by taking actions that "hindered [his] opportunities for promotion to Full Professor" (Compl. ¶ 98), he has advanced no legal argument supporting the proposition that he has a property interest in the opportunity for promotion to full professor.[3] Thus, plaintiff has no viable due process claim based on the deprivation of a property interest.

---

[3] Although plaintiff's failure to cite pertinent authority or advance a cogent legal argument for the recognition of a property right in a promotion to full professor is enough to reject such a claim, I also note that employees generally have no property interest in a prospective promotion. See Moore v. Muncie Police & Fire Merit Comm'n, 312 F.3d 322, 327 (7th Cir. 2002); see also Curtis v. Univ. of Houston, 940 F. Supp. 1070, 1078 (S.D. Tex. 1996) (stating that although plaintiff had property interest in status as tenured associate professor, plaintiff had no right to promotion to full professor).

## IV.  CONCLUSION

For the reasons stated, I conclude that plaintiff lacks any legal theory which would entitle him to relief based on any set of facts that could be proved consistently with the allegations of his complaint.  Although it might be possible to piece together a viable legal claim from the allegations of the complaint, plaintiff has not done so in his brief in opposition to defendants' motion to dismiss, and I may not do so on his behalf, Stransky, 51 F.3d at 1335.  Accordingly, defendants' motion to dismiss will be granted.[4]

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss is **GRANTED** and that this case is **DISMISSED**.  The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16 day of June, 2005.

/s                                     
LYNN ADELMAN
District Judge

---

[4] Because I have concluded that plaintiff has failed to state a viable claim against any of the defendants, I need not address defendants' arguments based on sovereign and qualified immunity.